1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TIMOTHY L. MILLIGAN,

11              Petitioner,                    2: 08 - cv - 2766 - MCE TJB

12        vs.

13   PAM AHLIN,                                FINDINGS AND RECOMMENDATIONS

14              Respondent.

15   _____/

16                               I.  INTRODUCTION

17        Petitioner, Timothy L. Milligan, is under an order of civil commitment and is proceeding

18   with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner raises the

19   following claims in this federal habeas petition:  (1) his due process rights were violated in that

20   the "standardized assessment protocol" used to evaluate him for civil commitment was "an

21   illegal underground regulation" ("Claim I"); (2) his due process and equal protection rights were

22   violated when the state appellate court falsely held the psychological evaluations were to be used

23   only to keep meritless civil commitment petitions from reaching trial ("Claim II"); (3) the Sexual

24   Violent Predator Act (SVPA) 2006 amendments unconstitutionally shifted the burden of proof to

25   Petitioner ("Claim III"); and (4) Petitioner's due process rights were violated when the structured

26   risk assessment instrument used in his case wildly inflated the prediction of Petitioner's re-

1

1   offense likelihood ("Claim IV").  For the following reasons, the habeas petition should be denied.

2                              II.  FACTUAL BACKGROUND[1]

3            A jury found true an allegation that defendant Timothy Leslie
             Milligan is a sexually violent predator (SVP) within the provisions
4            of Welfare and Institutions Code sections 6600 through 6604.
             Based on the jury finding, defendant was committed to the state
5            Department of Mental Health for appropriate treatment and
             confinement at Coalinga State Hospital for an indefinite term
6            pursuant to section 6604 . . . .

7            Defendant, born in January 1958, had several qualifying sexual
             offenses involving young boys.  Licensed psychologist John Hupka
8            outlined defendant's prior offenses and was of the opinion that he
             is a pedohile and an SVP who poses a high risk to reoffend.
9            Defendant's first offense occurred in 1978 at age 20.  He was
             married, and his wife had a son, age 9 or 10.  Defendant said he
10           "had an affair with her son," lasting a year and one-half, during
             which he and the boy engaged in "mutual masturbation and mutual
11           oral copulation."  Defendant was convicted, determined to be a
             mentally disordered sex offender, and placed at Atascadero State
12           Hospital for two years.

13           In 1988, defendant molested two 10-year-old boys, showing them
             photographs of nude children, giving them cigarettes, fondling
14           their penises, and attempting to sodomize them.  He received a
             four-year prison term.

15
             In 1992, defendant grabbed and squeezed the private parts of a 10-
16           year-old boy.  He received a four-year prison term.

17           In 1995, defendant fondled two boys, ages 10 and 12, by rubbing
             the clothing that covered their penises.  He met the boys at church,
18           and after church he followed them to a field where he made sexual
             advances.  He provided the boys alcohol, cigarettes, money and a
19           motor scooter; showed them pornography; and masturbated in front
             of them.  Similar acts of molestation occurred over a period of a
20           couple of months.  When defendant was arrested and his house was
             searched, pictures and videos of naked young boys were found.  He
21           received a 15-year prison term.

22           Dr. Hupka, who examined defendant on February 2, 2007
             diagnosed him with a "deep-seated" desire for children as shown
23           by his "history from the age of 20 to nearly 40, in which he has
             engaged in sex with children repeatedly and even done so despite
24

25          [1]  The factual background is taken from the California Court of Appeal, Third Appellate
        District opinion dated July 16, 2008 and attached as Exhibit A to Respondent's answer
26      (hereinafter the "Slip Op.").

                                             2

1    arrest, conviction, incarceration and treatment." Defendant
     acknowledges his sexual attraction to young boys.
2
     Dr. Hupka testified that based on the Static-99, an actuarial test
3    used to predict the changes of sexually reoffending, there is a 39
     percent chance that defendant would be convicted of a new sex
4    offense in the next five years, a 44 percent chance during the next
     10 years, and a 52 percent chance during the next 15 years. Dr.
5    Hupka said, "I think that he is at high risk to not be able to control
     his sexually deviant behavior. I think he is very unlikely to control
6    it."

7    Defendant told Dr. Hupka that his plan if released was to stay away
     from boys, get a job, earn money for retirement, find a good
8    woman, and do the right thing.

9    The defense did not call any witnesses.

10   (Slip Op. at p. 1-4.)

11                          III.  PROCEDURAL HISTORY

12        A.  State Proceedings

13        After being civilly committed, Petitioner appealed to the California Court of Appeal in

14   December 2007.  The California Court of Appeal affirmed the judgment on July 16, 2008.

15   Petitioner then filed a petition for review in the California Supreme Court.  On October 22, 2008,

16   the California Supreme Court summarily denied the petition for review.  Petitioner filed a state

17   habeas petition in the California Supreme Court in February 2010.  On March 10, 2010, the

18   California Supreme Court denied the state habeas petition citing In re Lindley, 29 Cal. 2d 709,

19   177 P.2d 918 (1947) and In re Dixon, 41 Cal.2d 756, 264 P.2d 513 (1953).

20        B.  Federal Proceedings

21        Petitioner filed his federal habeas petition in November 2008.  Respondent filed a motion

22   to dismiss arguing that Claims II and IV were unexhausted.  On April 20, 2010, Petitioner filed a

23   "Notice of Exhaustion" of his claims.  (See Dkt. No. 19.)  On April 22, 2010, Magistrate Judge

24   Brennan ordered the Respondent to file an answer to the federal habeas petition in light of

25   Petitioner's representation in his April 20, 2010 filing.  Respondent answered the petition on

26   August 18, 2010.  The matter was reassigned to the undersigned on July 5, 2011.

                                             3

IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States.  See 28 U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1994); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies.  See Lindh v. Murphy, 521 U.S. 320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.  See 28 U.S.C. 2254(d).  When no state court has reached the merits of a claim, de novo review applies.  See Chaker v. Crogan, 428 F.3d 1215, 1221 (9th Cir. 2005).

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'"  Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)).  "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"  Id. (citations omitted).  Under the unreasonable application clause, a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  See Williams v. Taylor, 529 U.S. 362, 409 (2000).  Thus, "a federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  Although only Supreme Court

4

1   law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in

2   determining whether a state court decision is an objectively unreasonable application of clearly

3   established federal law.  See Clark v. Murphy, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only

4   the Supreme Court's precedents are binding . . . and only those precedents need be reasonably

5   applied, we may look for guidance to circuit precedents.").

6                          V.  ANALYSIS OF PETITIONER'S CLAIMS

7        A.  Claim I

8            In Claim I, Petitioner argues that he was denied due process of law when the

9   "standardized assessment protocol" used to evaluate and try him for civil commitment was "an

10  underground regulation."  (Pet'r's Pet. at p. 5.)  The last reasoned state court decision on this

11  Claim was from the California Court of Appeal which stated the following:

12          *Compliance with the APA* [Administrative Procedure Act]

13          Defendant contends his commitment must be reversed because the
            petition was not supported by valid psychiatric evaluations
14          inasmuch as they were prepared in accordance with the protocol
            that had not been adopted as a regulation under the APA.  The
15          People respond that defendant has failed to exhaust his
            administrative remedies, the protocol does not qualify as a
16          regulation, and defendant's contention does not undermine the
            legitimacy of his commitment.  We need not reach the People's
17          first two points because their last point is dispositive.

18          *A*

19          *Overview of the Relevant Provisions of the SVPA*

20          The SVPA provides for the involuntary civil commitment of
            certain offenders who are found to be sexually violent predators.
21          (§6600 et seq.; People v. Superior Court (Ghilotti) (2002) 27
            Cal.4th 888, 902.)  To establish that an offender is an SVP, the
22          prosecution must prove the person; (1) has been convicted of one
            or more of the enumerated sexually violent offenses against one or
23          more victims; and (2) has a diagnosed mental disorder that makes
            the person a danger to the health and safety of others in that it is
24          likely that he or she will engage in sexually violent criminal
            behavior.  (§§ 6600, subd. (a)(1), 6604.)

25
            The person's commitment under the SVPA follows his completion
26          of a prison term (§ 6601, subd. (a); Hubbert v. Superior Court

                                        5

(1999) 19 Cal.4th 1138, 1145 and the process takes place in several stages, both administrative and judicial.  The inmate's records are first screened by prison officials, who may refer the inmate to the department for a full evaluation as to whether he or she meets the criteria for commitment of an SVP under section 6600.  (§ 6601, subd. (b).)

Department evaluators are required to evaluate the person in accordance with a standardized assessment protocol; developed and updated by the department, to determine whether the person is an SVP.  The protocol must "require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders.  Risk factors to be considered shall include criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder."  (§6601, subd. (c).)

The department's evaluation must be conducted by two practicing psychiatrists or psychologists or one practicing psychiatrist and one practicing psychologist designated by the director of the department.  If the department's evaluators concur that the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody, the director must forward a request for a commitment petition to the county where the offender was convicted.  (§ 6601, subd. (d).)

If the county's legal counsel concurs with the director's recommendation, a petition for civil commitment is filed in the superior court (§ 6601, subd. (i) and a judicial hearing is held to determine whether there is probable cause to believe the alleged SVP is likely to engage in sexually violent predatory criminal behavior upon his or her release.  If the court determines probable cause exists, it must order that a jury trial be held.  (§§ 6602, subd. (a), 6603, subd. (a).)

At trial, the state has the burden of proving "beyond a reasonable doubt" that the person is an SVP.  (§§ 6604.)  The person has several rights including the rights to the assistance of counsel, to retain experts or professional persons to perform an examination on his or her behalf, to have access to all relevant medical and psychological records and reports, to demand a jury trial, and to a unanimous verdict.  (§ 6603, subds. (a), (b), (f).)

*B*

*Defendant's Probable Cause Hearing*

In early 2007, two evaluation reports were prepared and a petition for commitment was filed.  Both psychologists found that defendant met the criteria for commitment.  A probable cause

6

hearing was held and defendant submitted the matter on the reports of the two evaluators.  The trial court found probable cause and ordered that a trial be held.

Defendant filed an in limine motion to dismiss the petition asserting that the evaluations, which are a prerequisite to filing a petition, are invalid for the same reasons raised on appeal.  The court denied the motion and the matter proceeded to trial.

The sole purpose of the probable cause hearing under the SVPA (§ 6602) is to weed out groundless petitions by testing the sufficiency of the evidence to support the SVPA petition.  (Cooley v. Superior Court (2002) 29 Cal.4th 228, 235, 247; People v. Hayes (2006) 137 Cal.APp.4th 34, 43-44.)  The hearing is analogous to a preliminary hearing in a criminal case.  (Cooley, at p. 247.)  It is an adversarial hearing (People v. Munoz (2005) 129 Cal.App.4th 421, 429) where the judge conducting the hearing must review all necessary elements of an SVP determination and conclude there is probable cause as to each element (Cooley, at p. 246 247).  Once that determination is made, the matter proceeds to trial (Hayes, at p. 44) where the prosecution has the burden of proving beyond a reasonable doubt that the alleged person is an SVP and the person has the right to court-appointed counsel, the right to retain experts and access relevant psychological and medical reports, and the right to a unanimous verdict.  (§§ 6603, subds. (a), (b), (e), (f), 6634.)

The psychiatric evaluations prepared prior to the filing of a petition under SVPA serve only as a procedural safeguard to prevent meritless petitions from reaching trial.  (People v. Scott (2002) 100 Cal.App.4th 1060, 1063, People v. Superior Court (Preciardo) (2001) 87 Cal.App.4th 1122, 1130.)  Once the petition is filed, a new round of proceedings is triggered.  (Hubbert v. Superior Court, supra, 19 Cal.4th at p. 1146.)

Consequently, challenges to a probable cause finding in an SVP proceeding are handled in the same manner as challenges to a preliminary hearing finding in a criminal case.  (People v. Hayes, supra, 137 Cal.App.4th at p. 51.)  Irregularities are not considered jurisdictional (People v. Talhelm (2000) 85 Cal.App.4th 400, 405) and reversal is required only if the defendant can show he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination (Hayes, at p. 50, relying on People v. Pompa-Ortiz (1980) 27 Cal.3d 519, 529-530).

Here defendant does not challenge the sufficiency of the evidence at the probable cause hearing or at trial.  His challenge is a procedural one – that the evaluations were not based on protocol adopted in a certain procedural manner.  Because the evaluations serve only to prevent meritless petitions from reaching trial (People v. Scott, supra, 100 Cal.App.4th at p. 1063; People v. Superior

> Court (Preciardo), supra, 87 Cal.App.4th at p. 1130) and a trial was
> held where a unanimous jury found beyond a reasonable doubt that
> defendant is an SVP, he has failed to establish any prejudice.
> Accordingly, his claim fails.

(Slip Op. at p. 4-8.)

The California Supreme Court in People v. Superior Court (Ghilotti), 27 Cal. 4th 888, 902-05, 119 Cal. Rptr. 2d 1, 44 P.3d 949 (2002), presents a detailed overview of the SVPA. CAL. WELF. & INST. CODE §§ 6600 et seq.  The original legislation became effective on January 1, 1996 and, "provides for the involuntary civil commitment of certain offenders, following completion of their prison terms, who are found to be SVP's because they have previously been convicted of sexually violent crimes and currently suffer diagnosed mental disorders which make them dangerous in that they are likely to engage in sexually violent criminal behavior." Ghilotti, 27 Cal. 4th at 902, 119 Cal. Rptr. 2d 1, 44 P.3d 949.

The SVPA codifies a process involving several administrative and judicial stages to determine whether a convicted sex offender meets the requirements for civil commitment.  The Department of Corrections screens sex offender inmates at least six months before their scheduled release dates.  CAL. WELF. & INST. CODE § 6601(a)(1).  "If officials find the inmate is likely to be an SVP, he is referred to the Department . . . for a 'full evaluation' as to whether he meets the criteria in section 6600." Ghilotti, 27 Cal. 4th at 903, 119 Cal. Rptr. 2d 1, 44 P.3d 949 (citations omitted).  Using appropriate assessment protocols, if at least two practicing psychiatrists or psychologists designated by the Director of Mental Heath concur that the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody, the Director shall forward a request for a commitment petition to the county where the offender was convicted of the predatory sex crime.  CAL. WELF. & INST. CODE § 6601(b)-(d).  If the county's legal counsel agrees with the request, a petition for commitment is filed in the Superior Court  Id. § 6601(i).

"The filing of the petition triggers a new round of proceedings" under the SVPA.

1   Ghilotti, 27 Cal. 4th at 904, 119 Cal. Rptr. 2d 1, 44 P.3d 949 (citation and internal quotation

2   marks omitted).  First, the superior court holds a hearing, at which the alleged predator is entitled

3   to assistance of counsel, to determine whether there is probable cause to believe that the

4   individual is likely to engage in sexually violent, predatory criminal behavior after release.  CAL.

5   WELF. & INST. CODE § 6602(a).  If the superior court determines that probable cause exists, the

6   court must order the individual to remain in custody pending a civil commitment trial.  Id.; see

7   Carty v. Nelson, 426 F.3d 1064, 1066-67 (9th Cir.), amended, 431 F.3d 1185, 1186 (9th Cir.

8   2005) (changing "the San Diego County District Attorney contends" to "the State contends"

9   (internal quotation marks omitted)).

10         At trial, the individual is entitled to "the assistance of counsel, to the right to retain

11   experts or professional persons to perform an examination on his or her behalf, and to have

12   access to all relevant medical and psychological records and reports."  CAL. WELF. & INST. CODE

13   § 6603(a).  Either party may demand and receive trial by jury.  See id. § 6603(a)-(b).  The trier of

14   fact "shall determine whether, beyond a reasonable doubt, the person is a sexually violent

15   predator."  Id. § 6604.  If it is determined that the person is a sexually violent predator, "the

16   person shall be committed for an indeterminate term to the custody of the State Department of

17   Mental Health for appropriate treatment and confinement in a secure facility designated by the

18   Director of Mental Health."  Id.  Once committed, a person found to be a sexually violent

19   predator shall have a current examination of his or her mental condition made at least once every

20   year.  See id. at § 6605(a).  The examination includes consideration of whether the committed

21   person currently meets the definition of a sexually violent predator and whether conditional

22   release to a less restrictive alternative or an unconditional release is in the best interest of the

23   person.  See id.  If it is determined that the person is no longer a sexually violent predator, or that

24   conditional release to a less restrictive alternative or an unconditional release is in the best

25   interest of the person, the director shall authorize the person to petition the court for conditional

26   release or unconditional discharge.  See id. § 6605(b).  The SVPA also provides that a committed

9

1    person can petition the court for conditional release or unconditional discharge without the

2    recommendation or concurrence of the Director of Mental Health.  See id. at § 6608.

3          In Hubbart v. Knapp, 379 F.3d 773, 781 (9th Cir. 2004) the Ninth Circuit specifically

4    cited to various safeguards within the SVPA which include "requirements that accused sexual

5    violent predators receive diagnoses from two psychiatrists or psychologists, assistance of

6    counsel, and trial by jury on proof beyond a reasonable doubt."  It then cited to Kansas v.

7    Hendricks, 521 U.S. 346 (1997) by explaining that the Supreme Court in that case:

8                 upheld against a due process challenge Kansas' civil commitment
                  statute, which is similar in relevant respects to the SVPA.  The
9                 Court held that state civil commitment schemes must at a
                  minimum follow "proper procedures and evidentiary standards and
10                require proof of dangerousness plus proof of an additional factor
                  such as a mental disorder.

11

12   Hubbart, 379 F.3d at 781.  Ultimately, the Ninth Circuit in Hubbart explained that because the

13   California Court of Appeal held that the SVPA satisfied the requirements set forth in Hendricks

14   and there was no United States Supreme Court authority to the contrary, petitioner's due process

15   claims were rejected.  See id.

16         Petitioner's argument in Claim I is that the standardized assessment protocol is an

17   underground regulation that did not comply with California's Administrative Procedures Act.

18   Petitioner was civilly committed not from the alleged absence of a proper standardized

19   assessment protocol.  The screening by the Department of Mental Health during which the

20   standardized assessment protocol is required is only a preliminary step and is not one that affects

21   the disposition of the merits.  See People v. Medina, 171 Cal. App. 4th 805, 814, 89 Cal. Rptr. 3d

22   830 (2009).  "In light of the judicial proceedings, [required for civil commitment under the

23   SVPA], including both a probable cause hearing and a trial, it is apparent that the SAP

24   [standardized assessment protocol] is not the determinative step in any SVP's commitment."

25   Johnson v. Santa Clara County, Civ. No. 09-2106, 2009 WL 5215749, at *7 (N.D. Cal. Dec. 29,

26   2009), aff'd, Johnson v. Connor, No. 10-15043, 2011 WL 4826111 (9th Cir. Oct. 12, 2011);

10

1  see also, Litmon v. Santa Clara County, Civ. No. 09-2158, 2010 WL 3155873, at *3 (N.D. Cal.

2  Aug. 9, 2010).  As noted by the California courts, the purpose behind the standardized

3  assessment protocol is:

4              not to identify SVP's but, rather to screen out those who are not
             SVP's.  The Legislature has imposed procedural safeguards to
5             prevent meritless petitioners from reaching trial. [T]he requirement
             for evaluations is not one affecting disposition of the merits; rather
6             it is a collateral procedural condition plainly designed to ensure the
             SVP proceedings are initiated only when there is a substantial
7             factual basis for doing so.

8  Medina, 171 Cal. App. 4th at 814, 89 Cal. Rptr. 3d 830 (internal quotation marks and citations

9  omitted).

10         Petitioner was found to be a SVP by a jury beyond a reasonable doubt.  He was civilly

11  committed as a result of the jury's finding.  Therefore, he was not harmed by the use of a

12  purportedly procedurally deficient standardized assessment protocol which did not comport with

13  California's Administrative Procedure Act.  See Litmon, 2010 WL 31355873, at *3; Johnson,

14  2009 WL 5215749, at *7; Bates v. Mayberg, Civ. No. 07-2700, 2007 WL 3037558, at *3 (N.D.

15  Cal. Oct. 17, 2007) ("[I]t is clear that the promulgation of the standardized assessment protocol

16  under the APA is a procedural right and the SVPA assessment statute does not create the type of

17  "substantive predicates" governing official decision making nor "explicitly mandatory language"

18  required to raise a due process claim based on the alleged state law violation.").  A jury made the

19  ultimate determination beyond a reasonable doubt that Petitioner was an SVP.  Thus, even if the

20  standardized assessment protocol was an "underground regulation," it does not amount to a due

21  process violation and Petitioner is not entitled to federal habeas relief on Claim I.

22         B.  Claim II

23         In Claim II, Petitioner argues that his due process rights were violated because the

24  evidence used to civilly commit him was only based on past criminal history and did not include

25  any current indicia of a mental disorder.  (See Pet'r's Pet. at p. 6.)  Petitioner raised this Claim in

26  his state habeas petition to the California Supreme Court.  As previously stated, the California

11

1   Supreme Court denied this Claim citing to <u>In re Lindley</u>, 29 Cal. 2d 709, 177 P.2d 918 and <u>In re</u>

2   <u>Dixon</u>, 41 Cal.2d 756, 264 P.2d 513.

3          Respondent argues that this Claim is procedurally barred.  A state court's refusal to hear

4   the merits of a claim because of the petitioner's failure to follow a state procedural rule is

5   considered a denial of relief on an independent and adequate state ground.  <u>See</u> <u>Harris v. Reed</u>,

6   489 U.S. 255, 260-61 (1989).  The state rule for these purposes is only "adequate" if it is "firmly

7   established and regularly followed."  <u>Ford v. Georgia</u>, 498 U.S. 411, 424 (1991); <u>see</u> <u>also</u> <u>Bennett</u>

8   <u>v. Mueller</u>, 322 F.3d 573, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law ground for

9   decision must be well-established and consistently applied.").  The state rule must also be

10  "independent" in that it is not "interwoven with the federal law."  <u>Park v. California</u>, 202 F.3d

11  1146, 1152 (9th Cir. 2000) (citing <u>Michigan v. Long</u>, 463 U.S. 1032, 1040-41 (1983)).

12  Furthermore, procedural default can only block a claim in federal court if the state court, "clearly

13  and expressly states that its judgment rests on a state procedural bar."  <u>Harris</u>, 489 U.S. at 263.

14  This means that the state court must have specifically stated that it was denying relief on a

15  procedural ground.  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991); <u>Acosta-Huerta v.</u>

16  <u>Estelle</u>, 7 F.3d 139, 142 (9th Cir. 1993).  Nevertheless, even if the state rule is independent and

17  adequate, the claim may be reviewed by the federal court if the petitioner can show:  (1) cause for

18  the default and actual prejudice as a result of the alleged violation of federal law; or (2) that

19  failure to consider the claims will result in a fundamental miscarriage of justice.  <u>See</u> <u>Coleman v.</u>

20  <u>Thompson</u>, 501 U.S. 722, 750 (1991).

21         Under <u>Lindley</u>, a petitioner who fails to exhaust sufficiency of evidence claims in his

22  direct appeal and raises them instead in a subsequent state habeas petition has procedurally

23  defaulted those claims as a matter of California law.  <u>See</u> <u>Carter v. Giurbino</u>, 385 F.3d 1194,

24  1197 (9th Cir. 2004) (citing <u>Lindley</u>, 29 Cal. 2d at 721-24, 177 P.2d 918).  The Ninth Circuit has

25  explained that <u>Lindley</u> is an adequate state ground because it is firmly established and regularly

26  applied.  "California courts have consistently applied <u>Lindley</u> since 1947 . . . The <u>Lindley</u> rule [ ]

1   is an adequate state ground to support [ ] a procedural default ruling."  Carter, 385 F.3d at 1198.

2         The California Supreme Court did not only cite to Lindley however in denying

3   Petitioner's state habeas petition.  It also cited to Dixon, 41 Cal. 2d 756, 264 P.2d 513 in denying

4   the petition.  Dixon states that:

5         [t]he general rule is that habeas corpus cannot serve as a substitute
          for an appeal, and, in the absence of special circumstances
6         constituting an excuse for failure to employ that remedy, the writ
          will not lie where the claims errors could have been, but were not,
7         raised upon a timely appeal from the judgment of conviction.

8   41 Cal. 2d at 759, 264 P.2d 513.  Thus, pursuant to Dixon, a California court will not review the

9   merits of a claim in a state habeas proceeding if it could have been raised in a timely appeal but

10  was not.

11        Prior to 1998, the Dixon rule was determined to not be independent of federal law.  See

12  Park, 202 F.3d at 1152-53.  In Park, the Ninth Circuit reasoned that application of the Dixon rule

13  necessarily was interwoven with federal law because there was a fundamental constitutional error

14  exception to the Dixon rule under state law.  See id. at 1152-53.  However, in In re Robbins, 18

15  Cal. 4th 770, 77 Cal. Rptr. 2d 153, 959 P.2d 311 (1998), the California Supreme Court held "that

16  henceforth California courts would no longer determine whether an error alleged in a state

17  petition constituted a federal constitutional violation."  See Bennett, 322 F.3d at 581.  In Bennett,

18  the Ninth Circuit held, "we respect the California Supreme Court's sovereign right to interpret its

19  state constitution independent of federal law" and, as a result found California untimeliness rule

20  was independent.  See id. at 581-83.  Thus, under these particular circumstances, the California

21  Supreme Court's invocation of Dixon in October 2008 after Robbins was decided would also be

22  an independent state ground.  See id. at 582-83; see also Park, 202 F.3d at 1153 n. 4 (9th Cir.

23  2000).  As Judge Kozinski recently noted, there is no existing Ninth Circuit precedent holding

24  that the Dixon rule is inadequate.  See Cree v. Sisto, Civ. No. 08-487, 2011 WL 66253, at *2

25  (E.D. Cal. Jan 7, 2011) (Kozinski, J., sitting by designation).

26        Thus, as both Lindley and Dixon are independent and adequate state grounds, this Claim

13

1   is deemed procedurally defaulted unless Petitioner can show cause for the default and actual

2   prejudice as a result of the alleged violation of federal law or that failure to consider the claims

3   will result in a fundamental miscarriage of justice.  See Coleman, 501 U.S. at 750.  Petitioner

4   makes no argument to overcome this procedurally default.

5        Nevertheless, even if this Claim was not procedurally barred, the Claim would still be

6   denied on the merits.  The United States Supreme Court has held that in criminal prosecutions,

7   the Due Process Clause "protects the accused against conviction except upon proof beyond a

8   reasonable doubt of every fact necessary to constitute the crime with which he is charged.  In re

9   Winship, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a criminal conviction

10  if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of

11  fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v.

12  Virginia, 443 U.S. 307, 319 (1979).  The United States Supreme Court has stated that, "to meet

13  due process demands," the standard of proof [in a civil commitment proceeding] must be higher

14  than the preponderance-of-the-evidence standard but may be lower than the beyond a reasonable

15  doubt standard.  See Addington v. Texas, 441 U.S. 418, 430-33 (1979).

16       As previously stated, to commit a person as a SVP under California's SVPA, the state

17  must prove that he "has been convicted of a sexually violent offense against one or more victims

18  and who has a diagnosed mental disorder that makes the person a danger to the health and safety

19  of others in that it is likely that he or she will engaged in sexually violent criminal behavior."

20  CAL. WELF. & INST. CODE § 6600(a)(1).  Viewing the evidence in the light most favorable to the

21  judgment, there was sufficient evidence to civilly commit Petitioner pursuant to the SVPA under

22  these circumstances.  During the trial, a psychologist, Dr. Hupka, who examined Petitioner

23  testified to Petitioner's previous sexually violent offenses.  (See Reporter's Tr. at p. 70-73.)  He

24  also testified that Petitioner suffers from a mental disorder that predisposes him to engage in

25  sexually violent behavior.  (See id. at p. 75.)  Dr. Hupka stated that Petitioner suffers from

26  pedophilia which involves on-going sexual attraction to children.  (See id. at p. 75-78.)  Dr.

1    Hupka explained that Petitioner "repeatedly acts out his sexual attraction to boys.  Because of his

2    inability to control that behavior on his own, he does meet this criteria of having a mental

3    disorder under the law."  (Id. at p. 78-79.)  Finally, Dr. Hupka testified that upon analyzing

4    several factors, Petitioner was at a high risk not to be able to control his sexually deviant

5    behavior and that he was at a high risk to reoffend.  (See id. at p. 97.)  Viewing this evidence in

6    the light most favorable to the judgment against Petitioner, there was sufficient evidence to

7    civilly commit him under the statute.  Thus, even analyzing the merits within Claim II, Petitioner

8    still is not entitled to federal habeas relief.

9           C.  Claim III

10          In Claim III, Petitioner argues that he was deprived of his due process rights because the

11   November 2006 revisions to the SVPA shifted the burden of proof to him and improperly

12   provided for an indeterminate period of commitment.  The SVPA requires the state to prove its

13   case beyond a reasonable doubt at the initial hearing, however, a subsequent hearing ordered by

14   the court when a petitioner files for discharge pursuant to section 6608 requires the committed

15   person to carry the burden of proof by a preponderance of the evidence.  See CAL. WELF. & INST.

16   CODE § 6608(I).  The last reasoned decision on this Claim was from the California Court of

17   Appeal which stated the following:

18              Defendant contends the revised SVPA denies him due process
                because "it appears the new law shifts to the SVP the initial or
19              qualifying burden of proof to show why he should be given a new
                trial, regardless of how many years he has been under
20              commitment."  He contends the revised SVPA violates equal
                protection since "[o]ther involuntary civil commitment mental
21              health laws do not provide for indeterminate terms."

22              In People v. Johnson (2008) 162 Cal. App. 4th 1263, Division One
                of the Court of Appeal, Fourth Appellate District recently rejected
23              both of these contentions.

24              Johnson rejected the due process claim as follows:  "Under section
                6605, when [the department of mental health] has authorized a
25              petition, only a minimal burden is imposed on the individual.  The
                individual is required only to show 'probable cause exists to
26              believe that [a] diagnosed mental disorder has so changed that he

15

or she is not a danger to the health and safety of others and is not likely to engage in sexually violent criminal behavior if discharged . . . .' (§ 6605, subd. (c).)  In these circumstances, the minimal threshold will be met and at the subsequent trial the People bear the burden of proving beyond a reasonable doubt that the individual remains a mentally ill and dangerous sexual predator. (§ 6605, subd. (d).)  Under this scenario, the risk of an erroneous deprivation is small:  The individual has only a minimal burden, the petition is supported by the [department of mental health] and the People are required to prove the individual is an SVP beyond a reasonable doubt.  If [the department of mental health] does not support the petition, it will be difficult for the committed individual to make the necessary showing that he is no longer mentally ill and dangerous SVP.  That difficulty, however, is due primarily to the lack of evidence supporting changed circumstances, rather than due to the obstacles resulting from the procedures.  Further, placing some burden on the committed individual is not unreasonable since it places the burden on the individual with the best ability to collect and present evidence on the issues and on the person with an interest in avoiding an erroneous continuation of confinement.  [Citation.]"  (People v. Johnson, supra, 162 Cal.App.4th at p. 1281; fns. omitted.)  Johnson concluded "neither the imposition of an indeterminate term of confinement nor placing some burden on the individual to petition for release violates due process.  The amended SVP Act contains sufficient procedural safeguards, including the periodic examinations and procedures for filing and reviewing petitions, to protect the interests of the individual while also providing for compelling state interests.  Due process does not require procedures that are unnecessary or have significant administrative and fiscal burdens to the state but provide little benefit."  (Id. at p. 1282.)

In rejecting the equal protection contention, Johnson explained:  "The treatment and prognosis for SVP's differs from the other classifications [Lanterman-Petris-Short Act committees, mentally disordered offenders and persons found not guilty by reason of insanity].  As we noted above, the other classifications may include individuals who have mental illnesses that can readily be treated or may be of a short duration.  SVP's, however, have a mental illness that generally requires long-term treatment and only a limited likelihood of cure.  The findings and declarations for Proposition 83, which amended the SVP Act, specifically recognize that 'sex offenders are the least likely to be cured . . . .' [Citation.] The Florida Supreme Court has observed, 'the treatment needs of this population are very long term" and necessitate very different treatment modalities form those appropriate for persons committed under [another Florida involuntarily commitment scheme].' [Citations.]  [¶]  In sum, individuals who are found to be SVP's under the SVP Act are not similarly situated to individuals committed under the LPS [Lanterman-Petris-Short] Act, mentally

16

disordered offenders or persons found not guilty by reason of insanity and therefore do not have to be treated the same as these other classifications." (People v. Johnson, supra, 162 Cal.App.4th at p. 1286.)

In People v. Riffey, (2008) 163 Cal.App.4th 474, 489, 491, footnotes 6 and 7, this court applied reasoning consistent with the due process and equal protection analyses in Johnson. We find Johnson and Riffey dispositive of defendant's due process and equal protection contentions.

(Slip Op. at p. 9-11.)

In Addington, the Supreme Court stated that the state needed to show something beyond a preponderance of the evidence to civilly commit an individual. See 441 U.S. at 427. California's SVPA requires the more stringent burden of proof beyond a reasonable doubt in the initial hearing. It is therefore in accord with Addington. Addington did not reach the issue of what is required at subsequent civil commitment trials. However, as the courts have noted, there is no clearly established United States precedent on the burden of proof at a subsequent hearing. See Helm v. Ahlin, Civ. No. 10-1517, 2011 WL 1832800, at *4 (E.D. Cal. May 13, 2011); Champagne v. Ahlin, Civ. No. 09-101, 2010 WL 1948568, at *6 (E.D. Cal. May 11, 2010).

The Supreme Court's decision in Hendricks, 521 U.S. 346 further warrants denying this Claim. As previously noted, in Hendricks, 521 U.S. 346 , the Supreme Court reviewed Kansas' SVPA which is similar to California's SVPA. The Kansas SVPA "establish[d] procedures for the civil commitment of persons who, due to a 'metal abnormality' or a 'personality disorder,' [were] likely to engage in 'predatory acts of sexual violence.'" Id. at 350 (citation omitted). As part of the process for committing an individual the state believed to be a sexually violent predator, a trial was held to make that determination under the Kansas statute. See id. at 352-53. Once confined, the individual was entitled to an annual review by the committing court to determine whether further commitment was necessary. See id. The Secretary of Social and Rehabilitative Services also could authorize the individual to petition for release if he determines that the individual's condition has so changed that release was appropriate. See id. The

17

1  committed individual also could petition the committing court at any time.  See id.  The Supreme

2  Court upheld the Kansas SVPA statute and did not address the specific procedures for continued

3  confinement or the burden of proof in subsequent proceedings.  It specifically stated that:  "[w]e

4  have consistently upheld such involuntary commitment statutes provided the confinement takes

5  place pursuant to proper procedures and evidentiary standards."  Id. at 357.

6          As outlined above, the Supreme Court has not stated what standard of proof is required in

7  a subsequent commitment hearing after a Petitioner has been lawfully civilly committed.

8  Nevertheless, it is also worth noting that in rejecting this Claim, the California Court of Appeal

9  relied on People v. Johnson, 162 Cal. App. 4th 1263, 76 Cal. Rptr. 3d 882 (2008) which analyzed

10  Petitioner's due process claim under the applicable test as stated in  Mathews v. Eldridge, 424

11  U.S. 319 (1976) (utilizing a three-factor test in analyzing due process claim that considers:  (1)

12  the private interest that is affected by the state action; (2) the risk of erroneous deprivation of the

13  interest through the procedures used as well as the probable value, if any, of additional or other

14  procedural safeguards; and (3) the state's interest, including the function involved and the, and

15  the fiscal and administrative burdens that the additional or other procedural requirement would

16  raise).  Reliance on Johnson was not an unreasonable application of clearly established federal

17  law.  See Hubbart, 379 F.3d at 780 (explaining that the state court applied the correct legal

18  principle by analyzing the Mathews cost-benefit factors).  Petitioner also fails to show that the

19  California Court of Appeal's decision resulted in a decision that was based on an unreasonable

20  determination of the facts.  Cf., Robinson v. Mayberg, Civ. No. 09-346, 2010 WL 2196564, at *7

21  (S.D. Cal. May 27, 2010) (rejecting Petitioner's due process argument by explaining that the

22  procedures set forth in the SVPA are sufficient to ensure that a person's confinement will not

23  continue beyond the point when he no longer suffers from a mental disorder or is no longer

24  dangerous), aff'd, No. 10-56117, 2011 WL 4565429 (9th Cir. Oct. 4, 2011).

25          For the foregoing reasons, Petitioner is not entitled to federal habeas relief on Claim III.

26  //

        D.  Claim IV

1

2          In Claim IV, Petitioner argues that he was "denied due process of law when the

3  'structured risk assessment instrument' (i.e., 'Static-99') used in petitioner's case wildly inflated

4  the prediction of petitioner's reoffense."  (Pet'r's Pet. at p. 6.)  Respondent argues that this Claim

5  is procedurally barred.  Petitioner raised this Claim to the California Supreme Court in his state

6  habeas petition.  (See Resp't's Lodged Doc. 9.)  As noted in Claim II, the California Supreme

7  Court denied this state habeas petition citing to Lindley and Dixon.  For the reasons discussed in

8  supra Part V.B, this Claim is procedurally barred.  Petitioner fails to show either cause and

9  prejudice to overcome the procedural bar or that there would be a fundamental miscarriage of

10  justice.  See Schlup v. Delo, 513 U.S. 298, 327 (1995) (to qualify for the fundamental

11  miscarriage of justice exception, Petitioner must show that a constitutional violation has probably

12  resulted in the conviction of one who was actually innocent.)

13          Even assuming *arguendo* that this Claim was not procedurally barred, Petitioner would

14  not be entitled to federal habeas relief on the merits of this Claim.  Petitioner's complaint with

15  the Static-99 evaluation is that it inflates the likelihood that he will engage in sexually violent

16  criminal behavior, one of the elements required to civilly commit Petitioner under California's

17  SVPA.  See  Cal. Welf. & Inst. Code § 6600(a)(1).  Thus, in essence, Petitioner argues that

18  there was insufficient evidence to find that this element was satisfied.  The Static-99 test is an

19  actuarial instrument which contains several items which are used to place people in either a

20  higher or lower risk category for being likely to reoffend.  (See Reporter's Tr. at p. 83-84; Dr.

21  Hupka's Rep. at p. 12.)

22          As Dr. Hupka noted in his report as well as during his trial testimony, the Static-99 test is

23  not a complete evaluation of the risk factors known to be associated with sexual offense

24  recidivism.  During his testimony at Petitioner's trial, Dr. Hupka stated that several other factors

25  beyond the Static-99 risk factors supported his conclusion that Petitioner had a likelihood to

26  reoffend.  For example, Dr. Hupka stated that Petitioner had lifestyle instability, childhood

1  maladjustment, questionable capacity for intimacy, lack of capacity for self-regulation, poor

2  cooperation with supervision in the community and a lack of adequate relapse prevention plans.

3  (See Reporter's Tr. at p. 89-92.)  In light of this testimony from Dr. Hupka, and viewing the

4  evidence in the light most favorable to the state, there was a strong case presented that Petitioner

5  had a likelihood to reoffend.  Therefore, Petitioner's arguments regarding the Static-99 test do

6  not warrant federal habeas relief and Claim IV should be denied.

7                                          VI.  CONCLUSION

8          For all of the foregoing reasons, IT IS RECOMMENDED that the petition for writ of

9  habeas corpus be DENIED.

10         These findings and recommendations are submitted to the United States District Judge

11  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

12  after being served with these findings and recommendations, any party may file written

13  objections with the court and serve a copy on all parties.  Such a document should be captioned

14  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15  shall be served and filed within seven days after service of the objections.  The parties are

16  advised that failure to file objections within the specified time may waive the right to appeal the

17  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In any objections he

18  elects to file, Petitioner may address whether a certificate of appealability should issue in the

19  event he elects to file an appeal from the judgment in this case.  See Rule 11, Federal Rules

20  Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability

21  when it enters a final order adverse to the applicant).

22  DATED:  October 21, 2011

23

24

25                                  TIMOTHY J BOMMER
                                    UNITED STATES MAGISTRATE JUDGE
26